1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  ROCHELLE C. EAST
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  TRACE O. MAIORINO, State Bar No. 179749
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 703-5975
    Fax: (415) 703-5843
8   Email: Trace.Maiorino@doj.ca.gov

9  Attorneys for Defendant Puckett

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

| DALLAN A. LOUIS, | C 07-6293 JSW (PR) |
|---|---|
| Plaintiff, | **DEFENDANT PUCKETT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| S. PUCKETT. | |
| Defendant. | |

20     TO PLAINTIFF DALLAN A. LOUIS:

21     PLEASE TAKE NOTICE that Defendant Puckett moves for summary judgment under

22  Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue of material fact

23  and judgment as a matter of law is appropriate.

24     The basis for this motion is that Plaintiff's First Amendment rights were not violated when

25  he did not immediately receive his mail on December 4, 2006. In addition, Defendant is entitled

26  to qualified immunity. This motion is based on this notice, the memorandum of points and

27  authorities, the supporting declaration, and the pleadings and records on file in this case.

28  ///

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff seeks to hold Defendant constitutionally liable simply because Plaintiff did not receive his daily mail the moment he demanded it. Plaintiff, an inmate at Salinas Valley State Prison (Salinas Valley), filed this § 1983 action and claimed that Defendant unreasonably withheld his incoming mail during mail call. However, Defendant did nothing more than temporarily pass over Plaintiff because of his disruptive demeanor during a single mail-call on December 4, 2006. Plaintiff cannot show that his constitutional right to receive mail was violated, and Defendant is entitled to summary judgment.

### STATEMENT OF THE ISSUE

1. The First Amendment entitles prison inmates to the reasonable use of mail, which includes the right to receive mail. Did Defendant deny Plaintiff his constitutional rights when Defendant delivered Plaintiff's mail to him shortly after Plaintiff first demanded it on December 4, 2006?

### STATEMENT OF THE CASE

On December 12, 2007, Plaintiff, a California state prisoner, filed his complaint in pro se under 42 U.S.C. § 1983, naming Correctional Officer Puckett as a defendant. In his complaint, Plaintiff alleged that on December 4, 2006 Defendant willfully and unreasonably withheld his mail in violation of his First Amendment rights. (Compl. 3.) Plaintiff seeks compensation in the amount of $10,000 in punitive damages for emotional and mental anguish. (*Id.*)

On April 24, 2008, the Court issued a screening order under the Prison Litigation Reform Act, 28 U.S.C. § 1915A, finding a cognizable First Amendment claim against Defendant Puckett. (Oder of Service 6.) The Court directed Defendant to file a dispositive motion addressing Plaintiff's allegation.

### STATEMENT OF FACTS

Plaintiff is a California Department of Corrections and Rehabilitation (CDCR ) inmate housed in Facility C at Salinas Valley. (Compl. 1.) Defendant is an officer assigned to work in Facility C at Salinas Valley. (Decl. Puckett ¶ 3.) Facility C houses approximately 128

inmates. (*Id.*) Defendant's duties require him to supervise inmates on the exercise yard, escort inmates to and from the showers, distribute and collect feeding trays, and distribute mail. (*Id.*) On a typical day, inmates return from the exercise yard at approximately 3:15 p.m. (*Id.* ¶ 4.) Once all inmates are secured in their cells, mail is typically distributed to the inmates. (*Id.*) Mail call usually takes fifteen to thirty minutes. (*Id.*)

On December 4, 2006, Plaintiff returned from the exercise yard and requested his mail before returning to his cell. (Decl. Puckett ¶ 6.) In accordance with procedure, Defendant advised Plaintiff that he would not receive his mail until all inmates had returned from the yard and were secured in their cells. (*Id.*) Plaintiff became upset and refused to return to his cell without his mail, but later complied and returned to his cell. (*Id.*)

Once all of the inmates were secured in their cells, Defendant distributed the mail. (Decl. Puckett ¶ 7.) Defendant came to Plaintiff's cell, but saw that he remained angry and continued to demand his mail in an assaultive tone. (*Id.*) Defendant did not deliver Plaintiff's mail to him, instead he continued to deliver the mail to the other inmates. (*Id.*) Approximately twenty minutes later, Defendant returned to Plaintiff's cell to deliver his mail to him. (*Id.*) But, Plaintiff had "boarded-up" his cell window by placing an item over the window, obstructing the view inside of the cell. (*Id.*) An inmate is not allowed to "board-up" his cell window at Salinas Valley because it prevents the correctional staff from ensuring that the inmates are not engaging in wrongful behavior. (*Id.*)

Defendant ordered Plaintiff to remove the item from his window and offered his mail to him. (*Id.*) Plaintiff refused to remove the item from his window and refused to accept his mail until he spoke to Defendant's supervisor. (*Id.*) Defendant immediately contacted his supervisor, Sgt. Jones. (Decl. Puckett ¶ 8.) Soon after, Sgt. Jones contacted Plaintiff. (*Id.*) Upon seeing Sgt. Jones, Plaintiff immediately removed the item from his cell window. (*Id.*) Defendant gave Plaintiff's mail to Sgt. Jones, who immediately gave it to Plaintiff. (*Id.*) As such, Plaintiff received his mail approximately two to three hours after he first demanded it on December 4, 2006 and no more than one hour after Defendant started mail delivery. (*Id.*)

/ / /

/ / /

Def. Puckett's Not. Mot. & Mot. Summ.    D. A. Louis v. Puckett, et al.
C 07-6293 JSW (PR)

3

# ARGUMENT

## I. LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate "where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact that may affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this initial burden, entry of summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). There is no triable issue of fact unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249.

## II. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF WAS NEVER DEPRIVED OF HIS INCOMING MAIL IN VIOLATION OF THE FIRST AMENDMENT.

Plaintiff's claim that his First Amendment rights were violated by Defendant when he was not given his mail on demand must fail because Plaintiff received his mail without any substantial delay. As a prison inmate, Plaintiff enjoys a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). But, a temporary or isolated delay in mail delivery, without evidence of an improper motive, does not violate an inmate's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999). Moreover, although an intentional and complete failure to deliver mail to an inmate, absent legitimate justification, violates the inmate's First Amendment right to receive mail, even persistent delays in the receipt of mail will not give rise to a constitutional violation. *Sizemore v. Williford*, 829 F.2d 608, 611 (7th Cir. 1987). In this matter, Plaintiff cannot show that Defendant completely failed to deliver mail to him. Instead, the facts show that Plaintiff received his mail shortly after delivery started. And he would have received it sooner but for his own disruptive behavior. These facts do not establish a constitutional violation.

In *Sizemore*, the court emphasized that merely alleging an isolated delay or some other relatively short-term, non-content-based disruption in the delivery of inmate reading materials will not support a First Amendment cause of action. *Id.* at 610. Here, Plaintiff cannot even show that he suffered any substantive disruption in his mail delivery because Defendant offered him his mail during the regularly scheduled mail delivery. Plaintiff alleges a constitutional violation simply because he did not receive his mail at the moment he demanded it from Defendant. On the date in question, Plaintiff returned from the exercise yard and demanded that he receive his mail before going to his cell. (Decl. Puckett ¶ 6.) Because the prison rules require all inmates to return to their cells first, Defendant refused to give Plaintiff his mail. (*Id.*) Once Plaintiff and the other inmates were secured in their cells, Defendant distributed the mail. (Decl. Puckett ¶ 7.) Defendant approached Plaintiff's cell and saw that he remained angry, demanding, and had an assaultive tone. (*Id.*) Defendant skipped over Plaintiff for the time being and continued to deliver mail to the other inmates, but he returned to Plaintiff's cell about twenty-minutes later and offered Plaintiff his mail. (*Id.*) Not only did Plaintiff refuse to accept it, but he also had "boarded-up" his cell window by placing an item over the window, in violation of the prison rules. (*Id.*) Thus, Plaintiff's allegation arises to nothing more than a very short-term disruption in mail delivery of no more than twenty minutes. Such an allegation cannot support a First Amendment cause of action. *Sizemore*, 829 F.2d at 610. Accordingly, Plaintiff cannot show that Defendant failed to deliver Plaintiff's mail in violation of Plaintiff's First Amendment rights, and Defendant is entitled to summary judgment.

## III. DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY FROM THIS SUIT.

### A. Legal Standard for Qualified Immunity.

Qualified immunity shields an official from civil-damages liability unless his conduct violated clearly established law, of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, it gives officials "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotes and citation omitted). Constitutional requirements are not always clear-cut at the time that action is required by

officials. *Saucier v. Katz*, 533 U.S. 194, 205–06 (2001). But qualified immunity ensures that officials are on notice that their conduct is unlawful before they are subjected to suit. *Id.* It therefore prevents officials from being distracted from their governmental duties or inhibited from taking necessary discretionary action. *Harlow*, 457 U.S. at 816. It also prevents "deterrence of able people from public service." *Id.* And in reference to prisons, it allows officials to utilize their expertise—based on years of observation and practice—to maintain order without fear of liability for doing what seemed "reasonable" at the time. *See Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. A court must first consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated, the inquiry ends and defendants prevail. *Id.* at 204. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* at 201-02. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The Supreme Court also held that the goal of qualified immunity would be undermined if a court denied summary judgment each time a material issue of fact remains on a claim. *Saucier*, 533 U.S. at 202.

### B.  Defendant Is Entitled to Qualified Immunity Because His Actions Were Not Clearly Unlawful.

As detailed above, the evidence does not show that Defendant violated Plaintiff's constitutional rights. But if the Court were to find such a violation, Defendant would still be entitled to qualified immunity because the law in effect at the time did not show that Defendants' actions were clearly unlawful.

As detailed above, Defendant did not violate Plaintiff's First Amendment right to receive mail when he refused to give Plaintiff his mail on demand and made Plaintiff wait for his mail until the end of mail-call. (Decl. Puckett ¶¶ 6, 7, 8.) At the time, it was clear that a temporary or isolated delay in mail delivery, without evidence of an improper motive, would not

arise to a violation of an inmate's First Amendment rights. *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999). Thus, Plaintiff having to wait a mere twenty minutes, until the end of mail-call, cannot amount to a constitutional violation. Even if Plaintiff could show a violation of his rights under the First Amendment, Defendant would still be entitled to qualified immunity because no reasonable correctional officer would have believed that delaying the delivery of Plaintiff's mail for such a short time, and for the reasons that exist here, would have resulted in a violation of his constitutional rights. Here, Plaintiff demanded his mail before going to his cell as required by the prison regulations. (Decl. Puckett ¶ 6.) Defendant refused, because all inmates must be secured in their cells before mail is delivered. (*Id.*) Surely, no reasonable officer would have believed that he had violated Plaintiff's constitutional rights by simply requiring Plaintiff to adhere to prison policy. Once the inmates were secured, Defendant came to Plaintiff's cell, but saw that he remained angry and continued to demand his mail in an assaultive tone. (*Id.*) Thus, it seems reasonable that an officer would continue to deliver mail, allowing the inmate additional time to overcome his anger toward an officer merely performing his duties. *See Jeffers*, 267 F.3d at 917. (holding that qualified immunity allows officers to maintain order by doing what seems "reasonable" without incurring damages liability). Twenty minutes later, Defendant returned, but Plaintiff refused to accept his mail. (*Id.*) A reasonable officer could have believed that requiring Plaintiff to wait a mere twenty minutes for his mail to be delivered was lawful. Accordingly, Defendant is entitled to qualified immunity.

///
///
///
///
///
///
///
///
///

## CONCLUSION

For the reasons stated above, the undisputed evidence shows that Defendant did not violate Plaintiff's First Amendment rights because Plaintiff received his daily mail from Defendant without any substantial delay. Even if Plaintiff were to show that there was a triable issue of fact that a constitutional violation had occurred, Defendant would still be entitled to qualified immunity because no reasonable officer would have believed that requiring Plaintiff to wait a mere twenty minutes for his mail to be delivered, would amount to a constitutional violation.

Dated: August 22, 2008

Respectfully submitted,

EDMUND G. BROWN JR.[1]
Attorney General of the State of California

DAVID S. CHANEY
Chief Assistant Attorney General

ROCHELLE C. EAST
Senior Assistant Attorney General

THOMAS S. PATTERSON
Supervising Deputy Attorney General

TRACE O. MAIORINO
Deputy Attorney General
Attorneys for Defendant Puckett

---

1. The Attorney General wishes to recognize the substantial contribution of Zaheer Maskatia to the drafting of this motion.

Def. Puckett's Not. Mot. & Mot. Summ.

D. A. Louis v. Puckett, et al.
C 07-6293 JSW (PR)